IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARCUS LAMONT OLLIE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-1261-S-BN |
| | § | |
| CITY OF DESOTO, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Marcus Lamont Ollie filed this *pro se* civil rights action raising claims related to his 2019 arrest for assault causing bodily injury/family violence. *See* Dkt. No. 3. The presiding United States district judge referred Ollie's case to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. The Court granted Ollie leave to proceed *in forma pauperis* (IFP). *See* Dkt. Nos. 4, 7. And the undersigned entered findings of fact and conclusions of law identifying deficiencies in Ollie's complaint and recommending that the Court dismiss the complaint but grant Ollie leave to file an amended complaint within a reasonable time (the Initial FCR) [Dkt. No. 8]; *Ollie v. City of DeSoto*, No. 3:22-cv-1261-S-BN, 2022 WL 4389562 (N.D. Tex. Aug. 30, 2022), *rec. accepted*, 2022 WL 4390446 (N.D. Tex. Sept. 22, 2022) (*Ollie I*).

Before the Court accepted the Initial FCR, *see* Dkt. No. 11, Ollie filed an amended complaint, *see* Dkt. No. 9.

And, after carefully reviewing Ollie's amended allegations, the undersigned

enters these findings of fact, conclusions of law, and recommendation that the Court should dismiss this lawsuit for the reasons and to the extent set out below.

## Applicable Background

Ollie identifies the dates of the events that he asserts give rise to his claims, which events, he further alleges, all "took place at [his] private domicile" in DeSoto ("The Plaintiff never left home. All the trouble and problem came to his home."): three dates in February 2019, one in April 2020, and one in April 2022. Dkt. No. 9 at 4. And he specifies causes of action for unlawful search and seizure, unlawful arrest, unlawful procurement of a warrant, violation of the Second Amendment, malicious prosecution/use of process, falsification of records, taking of his property without compensation, and violation of due process. *See* Dkt. No. 9 at 3.

The amended complaint goes on to indicate that the bulk of the alleged violations occurred in February 2019, when, on February 19, Ollie alleges that he "was attacked at his home" by an individual named Timothy Dodd. *Id.* at 4. Ten DeSoto officers responded. *See id.* And, according to Ollie, the officers focused on him and "never went after [Dodd,] who fled the scene before they arrived." *Id.*

Dodd returned the next day. *See id.* at 11. And, "[w]hen Dodd gave [Ollie a] dog back, [Dodd] tried to force his way into the front door and another altercation [ensued, where Ollie] eventually retrieved a baseball bat from his room in self defense, hence the Agg Assault with a Deadly Weapon charge." *Id.* "Neighbors … called the police." *Id.* Nine DeSoto officers responded. *See id.* "Once again Dodd fled the scene." *Id.* And "all officers came into [Ollie's] home, which [he] consented to so he could give officers

a recording of that day's incident." *Id.*

Ollie further alleges that, on both February 19 or 20, certain officer defendants unlawfully searched his home and seized his property. *See id.* at 9-11, 12.

Ollie was arrested on February 21 but "made bond a few days later." *Id.* at 12. He was arrested again on April 28, 2020 based on the February 2019 incidents and remained in the Dallas County jail for four months. *See id.*

Ultimately, the criminal charges against Ollie were dismissed, in April 2022. *See id.* at 5; *Ollie I*, 2022 WL 4389562, at *2 ("Looking past the complaint's sovereign-citizen frivolity, and considering Dallas County court records, of which the Court may take judicial notice, *see, e.g.*, *Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020) (per curiam), the facts alleged appear to be based on Ollie's February 2019 arrest for assault causing bodily injury/family violence, his allegedly striking the complainant with a baseball bat and a club, which resulted in Ollie's indictment for a felony, *see State v. Ollie,* F2020994, that was later reduced to a misdemeanor and then dismissed through a motion by the Dallas County District Attorney, which the Court granted on April 21, 2022, *see State v. Ollie*, M2004131 (Cnty. Crim. Ct. No. 1, Dall. Cnty., Tex.).").

## Legal Standards

A district court is required to screen a civil action filed IFP and may summarily dismiss that action, or any portion of the action, if, for example, it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). "The language of § 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)."

*Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (per curiam).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, but a plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In fact, "the court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021)).

To survive dismissal, plaintiffs must instead "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."))).

Put differently, plaintiffs, through the complaint, must provide the Court enough factual content to demonstrate an entitlement to relief. *Compare Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."), *with Robbins*, 519 F.3d at 1247 ("The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." (quoting *Twombly*, 550 U.S. at 556)).

The amended complaint repeats many of the deficiencies identified in the Initial FCR, deficiencies that Ollie had notice of before filing the amended complaint. So, to the extent that those deficiencies are repeated in the amended complaint, as to the claim or defendant impacted by those deficiencies, Ollie has now stated his best case, and the associated claim should be dismissed with prejudice. *See Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) ("Ordinarily, 'a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed.' Rule 15(a) provides that leave to amend shall be 'freely' given 'when justice so requires.' '[T]he language of this rule "evinces a bias in favor of granting leave to amend."' Granting leave to amend, however, is not required if the plaintiff has already pleaded her 'best case.' A plaintiff has pleaded her best case after she is 'apprised of the insufficiency' of her complaint. A plaintiff may indicate she has not pleaded her best case by stating material facts that she would include in an amended complaint to overcome the deficiencies identified by the court. Similarly, a district court need not grant a futile motion to amend." (citations

omitted)).

## Analysis

**I. The Court should dismiss the claims against the entity defendants and the official capacity claims against the individual defendants.**

To reiterate, because the amended complaint suffers from pleading deficiencies that the Court apprised Ollie of through the Initial FCR – in particular the requirements for plausibly alleging liability against a municipality and the non-jural nature of police departments – the Court should dismiss with prejudice Ollie's claims against the City of DeSoto, *see Ollie I*, 2022 WL 4389562, at *4 (explaining the requirements to plead municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)), and its police department, *see id.* (notifying Ollie that Texas police departments are not jural entities).

To be sure, Ollies does attempt, through the amended complaint, to establish liability against the City by way of its police chief, alleging that Defendant Chief of Police Joseph Costa (as well as the City's municipal judge, also named as a defendant) are policymakers. *See* Dkt. No. 9 at 3, 9, 13, 15.

But Ollie's *Monell* allegations are conclusory; that is, he has failed to allege specific facts to show (or from which the Court may infer) that the constitutional violations alleged are not isolated to this case. *See Henriquez v. City of Farmers Branch, Tex.*, No. 3:16-cv-868-M-BN, 2022 WL 3127838, at *4 (N.D. Tex. July 8, 2022) ("Regardless the theory of municipal liability, '[t]o proceed beyond the pleading stage, a complaint's "description of a policy or custom and its relationship to the underlying

constitutional violation ... cannot be conclusory; it must contain specific facts.'""" (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018); citing *Pinedo v. City of Dall., Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) ("To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'"))), *rec. accepted*, 2022 WL 3104844 (N.D. Tex. Aug. 4, 2022).

Specific to the policymaker prong of *Monell* liability, "[b]ecause the 'specific identity of the policymaker is a legal question that need not be pled,' plaintiffs can state a claim for municipal liability as long as they plead sufficient facts to allow the court to reasonably infer that the [policymaker] either adopted a policy that caused [their] injury or delegated to a subordinate officer the authority to adopt such a policy. In other words, plaintiffs must plead facts that sufficiently connect the policymaker ... to the allegedly unconstitutional policy." *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) (citing *Groden v. City of Dall., Tex.*, 826 F.3d 280, 284, 286 (5th Cir. 2016)).

But, "[r]egardless of who is the policymaker [for the City of DeSoto] under Texas law, [Ollie] fails to allege facts (as opposed to mere conclusions) that connect the policymaker to the allegedly unconstitutional policy." *Henriquez*, 2022 WL 3127838, at *7. That is, his amended complaint lacks "well-pleaded facts [to] 'establish that the challenged policy was promulgated or ratified by the city's policymaker.'" *Id.* at *6 (quoting *Groden*, 826 F.3d at 285); *see, e.g.*, Dkt. No. 9 at 9 ("Costa condoned and supported the actions of his officers, therefore making it a

policy of the Department since he is the main delegate of authority."); *id.* ("Chief Costa failed to train officers properly, hold them accountable, and to reprimand officers for unlawful acts. Instead officers were praised for blatant violations of the Constitution."); *id.* at 13 ("Joseph Costa dba Police Chief of the City of DeSoto, is a policymaking official whose actions represent a decision by the corporate municipality itself. The same is true of an official to whom the corporate municipality has given final policymaking authority: The actions of that official represent a decision by the government itself. Thus, when Joseph Costa dba Police Chief made a deliberate choice to excuse and back his officer's courses of action, that choice represents an official policy." (emphasis omitted)).

So, for these reasons, in addition to dismissing the claims against the City and its police department, the Court should also dismiss all official capacity claims against the individual defendants. *See, e.g.*, *Reese v. Monroe Cnty. Sheriff's Dep't*, 327 F. App'x 461, 464 (5th Cir. 2009) (per curiam) ("Under *Monell*, the [municipality], or its employees in their official capacities, could only be liable if the claimed constitutional deprivation resulted from a policy or custom of the [municipality]." (citing *Monell*, 436 U.S. at 694)); *Winslow v. Harris Cnty.*, Civ. A. No. H-07-767, 2007 WL 9754616, at *2 (S.D. Tex. May 21, 2007) ("In exchange for the ability to impose this type of liability on a municipal entity, a plaintiff bringing official capacity claims must satisfy the *Monell* 'policy and custom' standard." (citation omitted)); *Palo ex rel. Estate of Palo v. Dall. Cnty.*, No. 3:05-cv-0527-D, 2006 WL 3702655, at *1 n.3 (N.D. Tex. Dec. 15, 2006) ("[T]he § 1983 action against [a municipal employee in an] official

capacity is, in effect, a claim against [the City]." (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985))).

## II. As to the individual capacity claims, the Court should dismiss all but the malicious prosecution-based claims as time barred.

Other than an allegation that he was defamed, presumably in violation of Texas law, Ollie principally alleges violations of the Fourth Amendment, under various theories. Even his claim for violation of the Second Amendment – that, when property was seized from him, he was denied of the right to keep and bear arms – is better understood as a Fourth Amendment violation.

> It is not illegal, [for example], for a police officer to seize an arrestee's weapon if the officer is making a custodial arrest or reasonably believes that officer or public safety requires such a seizure. "So long as the requirements of the Fourth Amendment are met, police officers may ... confiscate guns that they believe have been used to commit a crime. Such a search and seizure is a reasonable, necessary restriction on an individual's Second Amendment right to bear arms."

*Hunter v. City of Electra, Tex.*, No. 7:03-cv-153-R, 2006 WL 1814150, at *7 (N.D. Tex. June 29, 2006) (quoting *Dickerson v. City of Denton*, 298 F. Supp. 2d 537, 540 (E.D. Tex. 2004)); *see also United States v. Wooldridge*, No. 4:15-CR-18, 2016 WL 2892529, at *8 (E.D. Tex. May 17, 2016) ("While the right to bear arms is not absolute, police officers may only confiscate firearms during the search of a premises if, and when, Fourth Amendment requirements have been met." (citation omitted)).

But such an instance, alleged with sufficient factual plausibility, may form the basis of a Fourth Amendment claim. *Cf. Schaefer v. Whitted*, 121 F. Supp. 3d 701, 711 (W.D. Tex. 2015) (The United States Supreme Court has "offer[ed] little guidance in this context where the circumstances pit an individual's Second Amendment rights

to carry a weapon for self-defense at his or her residence against an officer's rights to safely conduct the investigation of a crime at such an individual's home. This delicate balance has been properly struck under the Fourth Amendment, which seeks to determine the objective reasonableness of a particular search or seizure. Absent authority to do so, the Court declines to transform an excessive force claim into a novel Second Amendment claim merely because the challenged conduct has been recast as an attempt to seize Schaeffer's weapon while he was physically on his property. Accordingly, Plaintiff fails to state a claim under the Second Amendment." (citations omitted)).

As Ollie's allegations reflect, these violations occurred in February 2019. But Ollie did not file this lawsuit until June 2022.

So, insofar as Ollie's claims under the Fourth Amendment (or any other provision of the Constitution) accrued in February 2019, those claims are time barred. That is because, while claims for violations of the Constitution brought under Section 1983 are governed by Texas's two-year, personal-injury limitations statute, *see Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987); *Shelby v. City of El Paso, Tex.*, 577 F. App'x 327, 331 (5th Cir. 2014) (per curiam), courts "determine the accrual date of a § 1983 action by reference to federal law," *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). And "[f]ederal law holds generally that an action accrues when a plaintiff has a complete and present cause of action, or, expressed differently, when the plaintiff can file suit and obtain relief." *Id.* (cleaned up; quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar*

*Corp. of Cal.*, 522 U.S. 192, 201 (1997)). In sum, "the limitations period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Id.* (citation omitted).

For Ollie, that was in February 2019. And, except as discussed below, Ollie's criminal prosecution did not delay the accrual of the claims under Section 1983 for alleged violations of Fourth Amendment that Ollie waited until June 2022 to file.

For example, "false arrest [is] a Fourth Amendment claim that may be made (and is commonly made) prior to the conclusion of criminal proceedings." *Roe v. Johnson Cnty., Tex.*, No. 3:18-cv-2497-B-BN, 2020 WL 5542333, at *2 (N.D. Tex. Sept. 15, 2020) (citing *Bradley v. Sheriff's Dep't St. Landry Par.*, 958 F.3d 387, 392 (5th Cir. 2020) ("In *Wallace*, the Supreme Court rejected the argument that, because of *Heck[ v. Humphrey*, 512 U.S. 477 (1994)], accrual could not occur until there was a favorable termination of criminal charges, reasoning that 'the impracticality of' a 'rule' that 'an action which would impugn an anticipated future conviction cannot be brought until that conviction occurs and is set aside ... should be obvious.'")), *modified*, 2021 WL 3828151 (N.D. Tex. Aug. 27, 2021), *aff'd*, 2023 WL 117826 (5th Cir. Jan. 5, 2023).

Similarly, as to a state law defamation claim,

> [u]nder Texas law, there is a one-year statute of limitations for defamation actions. *See* TEX. CIV. PRAC. & REM. CODE § 16.002(a); *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 741-42 (5th Cir. 2019). Generally, a defamation claim accrues on the date the alleged defamatory statement is published or circulated by the defendant; however, in certain defamation cases the discovery rule applies, "whereby the statute of limitations does not begin to run until the injured party learns of, or in the exercise of reasonable diligence should have learned of, the injury or wrong giving rise to the cause of action."

> *Kelley v. Rinkle*, 532 S.W.2d 947, 948 (Tex. 1976); *see also Childs v. Haussecker*, 974 S.W.2d 31, 39-40 (Tex. 1998) (explaining the scope of the discovery rule).

*Klocke v. Watson*, No. 22-10348, 2023 WL 2823060, at *4 (5th Cir. Apr. 7, 2023) (per curiam).

No allegations made by Ollie trigger Texas's discovery rule. So this claim is also subject to dismissal as time barred.

That claims are subject to dismissal based on a statute of limitations is typically an affirmative defense.

But Ollie filed this lawsuit IFP, subjecting the complaint to judicial screening under 28 U.S.C. § 1915(e). And, if "'it is clear from the face of [such] a complaint ... that the claims asserted are barred by the applicable statute of limitations, those claims are properly dismissed' as frivolous." *Wilson v. U.S. Penitentiary Leavenworth*, 450 F. App'x 397, 399 (5th Cir. 2011) (per curiam) (quoting *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993) ("Although the defense of limitations is an affirmative defense, which usually must be raised by the defendants in the district court, this court has held that the district court may raise the defense *sua sponte* in an action proceeding under 28 U.S.C. § 1915. Thus, where it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations, those claims are properly dismissed pursuant to § 1915[(e)]." (citations omitted))).

That is the case here. The face of the amended complaint makes it clear that, except as set out below, Ollie's claims are time barred.

Nonetheless, "a litigant is entitled to equitable tolling of a statute of limitations" "if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010))

But a plaintiff must "allege specific facts" to support all prongs of "a plausible equitable tolling claim." *Taggart v. Norwest Mortg., Inc.*, Civ. A. No. 09-1281, 2010 WL 114946, at *3 (E.D. Pa. Jan. 11, 2010); *see also Chandra v. Bowhead Sci. & Tech., LLC*, No. 3:16-cv-375-B, 2018 WL 1252097, at *4 (N.D. Tex. Mar. 12, 2018) ("[C]ourts 'still require *pro se* parties to fundamentally "abide by the rules that govern the federal courts."' So *pro se* 'litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, ... and brief arguments on appeal.' Chandra's pleadings fall short of that goal by failing to allege any plausible facts entitling him to equitable tolling." (quoting *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014))); *cf. Peterson v. United States*, No. 8:18-cv-217-T-17TGW, 2018 WL 1832417, at *2 (M.D. Fla. Feb. 16, 2018) ("The FTCA's limitation period, however, is subject to equitable tolling. The plaintiff does not even mention that it applies. In light of the length of time between the death and the filing of this lawsuit, a claim of equitable tolling would seemingly be implausible and thus frivolous." (citation omitted)), *rec. adopted*, 2018 WL 1832419 (M.D. Fla. Mar. 14, 2018).

Because Ollie fails to allege facts to support either prong of equitable tolling, his claims are time barred.

### III. The Court should dismiss the malicious prosecution-based claims as conclusory.

Insofar as Ollie asserts Fourth Amendment violations analogous to the common law tort of malicious prosecution, *see Winfrey v. Rogers*, 901 F.3d 483, 492-93 (5th Cir. 2018); *Fusilier v. Zaunbrecher*, 806 F. App'x 280, 282-83 (5th Cir. 2020) (per curiam), such claims accrued "only once the underlying criminal proceedings have resolved in [his] favor," *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019) (citations omitted); *see also Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022) ("To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction.").

As alleged, the prosecution against Ollie ended without a conviction in April 2022. So his malicious prosecution-based claims are timely. Even so, Ollie fails to plead enough facts to plausibly allege such claims.

Following "*Thompson*'s clear recognition of the constitutional tort of malicious prosecution," the United States Court of Appeals for the Fifth Circuit "reinstated" "the rule iterated in *Gordy[ v. Burns*, 294 F.3d 722 (5th Cir. 2002),]" establishing the elements that "parties asserting a Fourth Amendment malicious prosecution claim under § 1983 must prove": "'(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.'" *Armstrong*, 60 F.4th at 279 (quoting *Gordy*, 294 F.3d at

727).

A plaintiff "must sufficiently allege each of these elements in order to bring a claim for malicious prosecution." *Wallace v. Taylor*, No. 22-20342, 2023 WL 2964418, at *6 (5th Cir. Apr. 14, 2023). But first, "because an unlawful seizure is the threshold element, if the prosecution is supported by probable cause on at least one charge, then a malicious prosecution claim cannot move forward." *Armstrong*, 60 F.4th at 279 n.15 (citing *Thompson*, 142 S. Ct. at 1337 n.2).

Ollie fails to cross this threshold. His probable-cause allegations are conclusory – that is, while he alleges that there was not probable cause, such an allegation is merely "a legal conclusion couched as a factual allegation," which the Court need not "accept as true" absent further factual support. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678; *see, e.g.*, Dkt. No. 9 at 9 ("Scott E. Kurth signed incomplete warrants without probable cause, nor affidavits containing truthful facts, showing sufficient evidence to constitute probable cause, to search and seize the Plaintiff's property, without a crime being committed.").

Moreover, the facts that Ollie has alleged raise an inference that there was probable cause for a warrant, a "relatively low threshold." *Schambach v. City of Mandeville*, Civ. A. No. 20-214, 2022 WL 1773873, at *8 (E.D. La. June 1, 2022) ("To reiterate, probable cause is a relatively low threshold: 'something more than bare suspicion, but need not reach the fifty percent mark.'" (quoting *United States v. Williams*, 836 F. App'x 310, 312 (5th Cir. 2021) (per curiam))); *see also Loftin v. City of Prentiss, Miss.*, 33 F.4th 774, 782 (5th Cir. 2022) ("Loftin complains that Chief

Bullock's affidavit omitted information relating to his claim of self-defense and to the gun McInnis ditched while fleeing from the scene of the crime, which matched the description for the weapon that Walker allegedly brandished. But even if the warrant affidavit included that information, it would still satisfy the low probable-cause threshold. As explained, a suspect's declaration of innocence does not vitiate probable cause.").

Ollie alleges that he possessed a baseball bat during his February 20, 2019 encounter with Dodd; that, on that day, he "consented" to the officers entry into his home; and that he was arrested pursuant to a warrant the next day. Dkt. No. 9 at 11-12; *compare id.*, *with State v. Ollie,* F2020994 (indictment alleging that Ollie, "on or about the 20th day of February, 2019 … did then and there intentionally and knowingly cause bodily injury to another namely: Timothy Dodd … by striking [him] with a baseball bat and a club" (emphasis omitted)).

**Leave to Amend**

The time to file objections to this recommendation (further explained below) allows Ollie an opportunity to explain how the fatal pleading deficiencies identified above can be cured and thus show the Court that this case should not be dismissed with prejudice at this time and that the Court should instead grant leave to amend. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, FED. R. CIV. P. 15(a)(2), but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's

defects. *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016). If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave. *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (affirming denial of leave to amend where plaintiffs 'failed to amend their complaint as a matter of right, failed to furnish the district court with a proposed amended complaint, and failed to alert both the court and the defendants to the substance of their proposed amendment').").

But, if Ollie fails to show that leave to amend should be granted, the Court should now dismiss this case with prejudice.

**Recommendation**

The Court should dismiss this action with prejudice unless, within the time to file objections, Plaintiff Marcus Lamont Ollie shows a basis to grant leave to amend the complaint.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure

to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 24, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE